IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA    )
                            )
         v.                 ) Criminal No. 08-335
                            )
RODERICK K. BOGLE           )


O P I N I O N

DIAMOND, D.J.

On September 16, 2008, a federal grand jury returned a one-count indictment charging Roderick K. Bogle ("defendant") with receipt of child pornography in violation of 18 U.S.C. §2252(a)(2). Currently pending before the court are defendant's motion requesting notice pursuant to Rule 404(b) and motion to suppress search warrant and statements. A hearing was held before this member of the court on February 18, 2009, at which the court heard testimony from Special Agent Sara Seidman, Special Agent James Stitzel, Special Agent Michael Opferman, and defendant. For the following reasons, defendant's motion requesting notice pursuant to Rule 404(b) will be granted and defendant's motion to suppress will be denied.

The charge against defendant stems from an investigation conducted by the Cyber Crimes Center of Immigration and Customs Enforcement ("ICE") into a series of websites containing child pornography operating under the title "Home Collection." The

Home Collection websites collected from subscribers payments of $79.95 per month through Paypal, a company specializing in facilitating commercial transactions on the internet.

Agents subscribed to 23 of the Home Collection websites and directly viewed thousands of images of child pornography. Agents then obtained transactional logs from Paypal accounts which accepted payments for subscriptions to the Home Collection websites, including an account with an e-mail address of petlust_ltd@juno.com. Through these logs, the agents learned that defendant had purchased a subscription to the Home Collection website "Lolitas on Holiday" for $79.95 on December 18, 2006.

On October 18, 2007, a federal search warrant was executed at defendant's residence at 1161 Termon Avenue, Pittsburgh, Pennsylvania, and agents seized, *inter alia*, a Dell laptop computer. A subsequent forensic examination of the computer revealed 76 full-size images of child pornography as well as 101 thumbnail size child pornographic images, all of which had been deleted and were found in the computer's unallocated space.

Defendant was interviewed at his residence on the day of the search and signed a written statement admitting that he had accessed numerous pay sites containing images of nude underage girls between 2001 and August of 2007 and that he had deleted from his computer any images of nude underage girls because he was ashamed of having accessed the sites and having looked at the images.

AO 72
(Rev 8/82)

Defendant's first motion requests advance notice of the government's intent to use evidence of other crimes, wrongs or acts pursuant to Fed. R. Evid. 404(b).[1] The government has acknowledged its responsibility to provide advance notice of the general nature of any other crimes, wrongs or acts it intends to offer at trial, and proposes that it be permitted to provide such notice ten days prior to trial.

Although Rule 404(b) does not provide a time frame for what constitutes "reasonable notice", courts have found ten days prior to trial sufficient. See, e.g., United States v. Evangelista, 813 F.Supp. 294, 302 (D.N.J. 1993); United States v. Williams, 792 F.Supp. 1120, 1133 (N.D.Ill. 1992). Accordingly, defendant's motion will be granted and an order will be entered requiring the government to provide notice of its intent to offer Rule 404(b) evidence no later than ten days prior to trial.

Defendant also has filed a suppression motion in which he seeks to have excluded from trial any evidence seized during the execution of the search warrant as well as any oral or written statements he made to the investigating agents on the day that the search warrant was executed.

---

[1] Fed.R.Evid. 404(b) provides that evidence of other crimes, wrongs or acts is not admissible to prove the character of a person in order to show action in conformity therewith, but may be admissible for other enumerated purposes, provided that, upon request by the accused, the government shall provide reasonable notice in advance of trial of the general nature of any such evidence it intends to introduce at trial.

Defendant seeks suppression of all physical evidence seized during the execution of the search warrant at his residence at 1161 Termon Avenue on October 18, 2007. Specifically, defendant contends that: (1) the search warrant is not supported by probable cause; (2) that the information set forth in the search warrant application was stale; (3) that probable cause was based in part on "illegal surveillance" of defendant's residence; (4) that certain conclusions set forth in the search warrant affidavit have no basis in fact; and, (5) that the affidavit sets forth only a "boilerplate description" of the items to be seized.

The first issue before the court is whether probable cause existed to support the issuance of the warrant. Whether probable cause exists is to be determined by a practical and common sense approach. Illinois v. Gates, 462 U.S. 213 (1983). The appropriate inquiry is "whether, given all the circumstances set forth in the affidavit before [the magistrate], including the [veracity] and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place." Id. at 238-39. The Court stated that "probable cause is a fluid concept--turning on the assessment of probabilities in particular factual contexts ...." Id. Thus, an application for a search warrant must "establish that certain items are probably located at the present time in a certain place." United States v. Tehfe, 722 F.2d 1114, 1119 (3d Cir. 1983).

In Massachusetts v. Upton, 466 U.S. 727 (1984), the Supreme Court emphasized that the reviewing court is not to conduct a "de novo probable cause determination" but is to decide merely "whether the evidence reviewed as a whole provided a substantial basis for the magistrate's finding of probable cause." Thus, the warrant is to be upheld as long as there is a "substantial basis" for a "fair probability" that specified evidence will be found in a particular place. Id.

Here, a review of the search warrant application and affidavit prepared by Special Agent Sara Seidman demonstrate a substantial basis for the Magistrate Judge's finding of probable cause. Special Agent Seidman averred in the affidavit that a Paypal log from December 18, 2006, showed that an individual named Roderick Bogle with a street address of 1161 Termon Avenue, Pittsburgh, Pennsylvania, and an e-mail address of rkbogel@comcast.net, paid $79.95 to subscribe to "Lolitas on Holiday," one of the Home Collection websites that the investigation already had discovered contained child pornography.

The agents then corroborated the Paypal information by subpoenaing records from Comcast, defendant's internet provider, which revealed that a Roderick Bogle, with the same email address, telephone number and address as shown on the Paypal log, was using the same IP address of the computer used to conduct the transaction on December 18, 2006, and confirmed that defendant still had internet access through Comcast as of August

22, 2007. Driver's license records and records from the Postal Service also confirmed defendant's address as 1161 Termon Avenue, and that defendant was receiving mail there as of October 2, 2007, two weeks prior to the issuance of the search warrant. Finally, Special Agent Seidman averred that ICE agents had information that defendant also had subscribed to pay websites containing child pornography in 2003 using the same identifying information.

The foregoing information, set forth in the affidavit at ¶¶ 29-47, is more than sufficient to form a substantial basis for a fair probability that evidence of a crime would be found on defendant's computer at defendant's residence. Defendant's argument that the affidavit failed to show that defendant actually had viewed any child pornography or even that he had accessed the site at all is unavailing. The standard for a finding of probable cause is a fair probability that evidence of a crime would be found on defendant's computer. The information contained in the affidavit satisfies that standard. Accordingly, defendant's motion to suppress will be denied to the extent it contests probable cause.

Defendant also contends that the information contained in the search warrant affidavit was stale. Specifically, defendant suggests that the delay between defendant's alleged purchase of his subscription to "Lolitas on Holiday" on December 18, 2006, and the execution of the search warrant ten months later, on October 18, 2007, was too lengthy to establish probable cause to

believe that any illicit materials still were on defendant's computer.

While it is established that the age of the information supporting a warrant application is a factor in determining probable cause, it equally is well established that age alone does not determine staleness. United States v. Zimmerman, 277 F.3d 426 (3d Cir. 2002). Rather, the nature of the crime and the type of evidence must also be examined. Id.; United States v. Harvey, 2 F.3d 1318 (3d Cir. 1993). The issue as to whether or not information in an affidavit is stale must depend upon the nature of the activity in question and usually requires review on a case-by-case basis. United States v. Harris, 482 F.2d 1115 (3d Cir. 1973).

The government contends that the information in the affidavit was not stale. Specifically, the government refers to a statement contained in the affidavit indicating that persons interested in child pornography generally tend to retain the images for a prolonged period and also noted that defendant also had subscribed to child pornography websites in 2003 suggesting a long-term interest in this type of material. See, e.g., United States v. Urban, 404 F.3d 754, 774 (3d Cir. 2005) (where facts adduced to support probable cause describe pattern of ongoing and continuous criminality, passage of time between occurrence of facts and submission of affidavit loses significance).

AO 72
(Rev 8/82)

The Third Circuit has recognized that individuals rarely, if ever, dispose of child pornography. See United States v. Harvey, 2 F.3d 1318 (3d Cir. 1993); United States v. Eberle, 266 Fed. Appx. 200, 206 (3d Cir. 2008) (three-year old information that defendant had uploaded child pornography from a different computer not stale). "Presumably, individuals will protect and retain child pornography for long periods of time because it is illegal and difficult to obtain." Zimmerman, 277 F.3d at 434; see also United States v. Lacy, 119 F.3d 742 (9th Cir. 1997) (ten-month old information in affidavit not stale in child pornography case since collectors rarely if ever dispose of such material and store it for long periods in a secure place, typically their home).

The court does not believe that the brief ten-month period between defendant's subscription to the Home Collection website and the execution of the search warrant rendered the information contained in the affidavit stale, particularly in light of the nature of the evidence and the acknowledged presumption that individuals rarely dispose of child pornography. Defendant's challenge to the warrant on staleness grounds therefore is denied.

Defendant next challenges Attachment B of the search warrant affidavit which describes the items to be searched for and seized. Defendant contends, generally, that the majority of the affidavit in support of the warrant application is "canned" and, specifically, that Attachment B is merely a "boilerplate"

description of the items to be seized without any basis in fact as to the circumstances of this case.

General warrants are prohibited by the Fourth Amendment, which requires that a search warrant describe the things to be seized with sufficient particularity and be no broader than the probable cause upon which it is based. Zimmerman, 277 F.3d at 431-32. For a search warrant to be invalidated as general, it must vest the executing officers with unbridled discretion to conduct an exploratory rummaging through the defendant's possessions in search of criminal evidence. United States v. $92,422.57, 307 F.3d 137, 148-49 (3d Cir. 2002). To determine whether a search warrant is overbroad, the court must compare the scope of the search and seizure authorized by the warrant with the ambit of probable cause established by the supporting affidavit. In re Impounded Case (Law Firm), 840 F.2d 196, 200 (3d Cir. 1988).

Courts that have been faced with determining the scope of warrants authorizing the seizure of computer equipment for the most part have held that descriptions of computer hardware can satisfy the particularity requirement so long as the subsequent searches of the seized computer hardware appear reasonably likely to yield evidence of a crime. See, e.g., United States v. Hay, 231 F.3d 630, 634 (9th Cir. 2000) (upholding seizure of "computer hardware" in search for materials containing child pornography); United States v. Upham, 168 F.3d 532, 535 (1st Cir. 1999) (upholding seizure of computer hardware and software

AO 72
(Rev 8/82)

where seizure and subsequent off-premises search of computer and all disks narrowest seizure reasonably likely to obtain images of child pornography); United States v. Lacy, 119 F.3d 742, 746 (9th Cir. 1997) (upholding "blanket seizure" of computer equipment where there was probable cause to believe computer contained evidence sought); Davis v. Carey, 111 F.3d 1472 (10th Cir. 1997) (upholding validity of warrant authorizing seizure of equipment pertaining to distribution or display of pornography); United States v. Henson, 848 F.2d 1374, 1382-83 (6th Cir. 1988) (upholding seizure of computers, computer terminals, cables, printers, discs, floppy discs, and tapes that could hold evidence of defendant's fraud).

After reviewing the warrant and affidavit in this case and the applicable case law, the court is satisfied that the warrant is not overbroad. The search and seizure authorized by the warrant is within the ambit of probable cause established by the affidavit, which was limited by its preface to images of child pornography and files containing images of child pornography, and the affidavit itself raised a fair probability that evidence of such a crime would be found at defendant's residence. Moreover, the search of the seized computer hardware as authorized by the warrant was reasonably likely to yield evidence of a crime. Indeed, the equipment authorized to be seized all could have revealed evidence of a crime and a search of all of that equipment was the only practical way to determine if evidence of child pornography would be found.

As the warrant in this case described with sufficient particularity the things to be seized and was no broader than the probable cause upon which it was based, it satisfied the particularity requirement of the Fourth Amendment and was not overbroad. Accordingly, to the extent defendant challenges the affidavit for a "boilerplate" description of the items to be seized, his motion to suppress will be denied.

Defendant's remaining challenges to the search warrant are without merit. To the extent defendant alleges that probable cause was based in part on "unlawful surveillance" of his residence, the testimony of Special Agent Seidman establishes that the "surveillance" of the residence never involved any type of entry onto defendant's curtilage but instead consisted of a drive-by of the residence and some photographs taken from the street. Moreover, to the extent defendant challenges Special Agent Seidman's conclusion set forth in the affidavit that defendant has a "sexual interest in children," that isolated statement, regardless of its accuracy, has no bearing on the probable cause determination when the affidavit is viewed in its entirety.

Finally, even if the court had accepted defendant's argument that probable cause was lacking for the issuance of the search warrant, the evidence would not be suppressible unless the executing agents failed to meet the good faith exception to the exclusionary rule set forth in United States v. Leon, 468 U.S. 897 (1984). Pursuant to Leon, "in the absence of an

allegation that the magistrate abandoned his detached and neutral rule, suppression is appropriate only if the officers were dishonest or reckless in preparing their affidavit or could not have harbored an objectively reasonable belief in the existence of probable cause." Id. at 926. "A warrant may be so facially deficient ... that the executing officers cannot reasonably presume it to be valid." Id. at 923.

Here, even assuming that the warrant lacked probable cause, it clearly was not so facially deficient as to render unreasonable the executing officers' presumption of its validity nor is there any evidence that the affidavit recklessly was prepared. Accordingly, to the extent defendant's motion seeks suppression of any evidence seized through the execution of the search warrant, it will be denied.

Defendant's suppression motion also seeks to exclude as evidence at trial a signed written statement that defendant made at his residence on October 18, 2007, as well as any oral statements he made to the agents. Defendant argues that the agents failed to advise him of his Miranda rights prior to obtaining the statements and that the statements otherwise were not voluntary. The government contends, however, that the statements were not the product of custodial interrogation such that Miranda warnings were necessary and that the statements were voluntary in all other respects.

Before police can initiate custodial interrogation, they must advise the defendant of certain rights, including the right

AO 72
(Rev 8/82)

to remain silent and the right to counsel. Miranda v. Arizona, 384 U.S. 436, 468-470 (1966). As set forth in Miranda:

> The prosecution may not use statements, whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination. By custodial interrogation, we mean questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way.

Id. at 444.

Here, it is not disputed that defendant was not advised of his Miranda rights. Thus, the first issue before the court is whether the recitation of such rights was necessary, *i.e.*, whether defendant was subjected to custodial interrogation at the time he made the allegedly incriminating statements.

Custodial interrogation means "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." Miranda, 384 U.S. at 444. Whether a suspect is in custody depends on whether, under the totality of the circumstances, a reasonable person in his position would feel free to leave. Thompson v. Keohane, 516 U.S. 99, 112 (1995). The court must apply an objective test to determine the ultimate question of whether there was "'a formal arrest or restraint of freedom of movement' of the degree associated with a formal arrest." California v. Beheler, 463 U.S. 1121, 1125 (1983) (quoting Oregon v. Mathieson, 429 U.S. 492, 495 (1977)).

Where an individual, such as defendant in the case at bar, has not been formally arrested when the statements are made, "'something must be said or done by authorities, either in their manner of approach or in the tone or extent of their questioning, which indicates they would not have heeded a request to depart or to allow the suspect to do so.'" United States v. Leese, 176 F.3d 740, 743 (3d Cir. 1999) (quoting Steigler v. Anderson, 496 F.3d 793, 799 (3d Cir. 1976).

Because custodial interrogation is not susceptible of an exact definition, the determination of whether statements are the product of such custodial interrogation must be made on a case-by-case basis. Leese, 176 F.3d at 743. Moreover, the inquiry into the circumstances surrounding the interrogation obviously is "distinctly factual." Thompson, 516 U.S. at 112.

Under the totality of the circumstances as established through the testimony of all of the witnesses at the hearing, the court finds that defendant was not "in custody" within the meaning of Miranda during his interview with the ICE agents. The testimony establishes that defendant was not at home at the time of the execution of the search warrant, rather he was away on business near Wilkes-Barre. After having spoken to the officers several times, defendant made the decision to drive back to Pittsburgh to meet with the agents at his residence on that same day. Defendant acknowledged on the stand that the agents gave him the option of meeting the following day, but he nevertheless made the decision to drive back on that day.

The testimony elicited at the hearing also establishes that upon his arrival at the residence, defendant was informed orally several times by the agents that he was not under arrest, that he was not going to be arrested and that he was free to end the interview at any time. Thereafter, defendant agreed to speak with the agents and appeared willing at all times to discuss the matter during the interview.

There simply is no credible evidence so much as suggesting that defendant was in custody at the time he spoke to the agents. The only evidence to the contrary was defendant's subjective testimony that he felt "threatened", "dumbfounded" and "violated" and that he believed he would be arrested if he did not talk. However, the test of whether there was a restraint of freedom of movement of the degree associated with a formal arrest is objective, not subjective. See Beheler, 463 U.S. at 1125. Thus, the fact that defendant subjectively believed the officers would not have heeded a request to depart is irrelevant to the inquiry. Rather, the court must determine whether a reasonable person in defendant's position would have felt free to leave. See, Thompson, 516 U.S. at 112.

Thus, although defendant stated it was his belief he would be arrested if he did not talk, he also conceded that the agents told him that he was not under arrest and that he could leave if he wanted. In light of the fact that the agents expressly told defendant on several occasions that he was free to leave, the court must conclude that a reasonable person in defendant's

position would have felt free to do so.

After due consideration of the testimony and evidence presented at the hearing, the court finds that a reasonable person in defendant's position would have felt free to leave or to have ended the interview under the totality of the circumstances. Accordingly, defendant was not in custody and no Miranda warnings were necessary. To the extent defendant's motion seeks suppression of statements made in violation of Miranda, it will be denied.

Even absent a Miranda violation, the court still must determine whether defendant's statements otherwise were voluntary. Defendant alleges that any statements he gave were the product of "threats, intimidation and/or coercion" and that the agents dictated the language and contents of the written statement.

A statement is involuntary when the suspect's "will was overborne in such a way as to render his confession the product of coercion." Arizona v. Fulimante, 499 U.S. 279, 288 (1991). Whether a statement is voluntarily made is determined from "the totality of all the surrounding circumstances - both the characteristics of the accused and the details of the interrogation." Dickerson v. United States, 530 U.S. 428, 434 (2000) (quoting Schneckloth v. Bustamonte, 412 U.S. 218, 226 (1973)).

Relevant factors to consider in evaluating voluntariness include not only the crucial element of police coercion, but

also may include the length of the interrogation, its location, its continuity, the defendant's maturity, education, physical condition and mental health. See Colorado v. Connelly, 479 U.S. 157, 167 (1986); Withrow v. Williams, 507 U.S. 680, 693 (1992). The overriding question in evaluating voluntariness is whether the law enforcement officer's tactics and statements "were so manipulative or coercive that they deprived [the defendant] of his ability to make an unconstrained, autonomous decision to confess." Miller, 796 F.2d at 605.

The government has the burden of establishing the voluntariness of any statements given. Miller v. Fenton, 796 F.2d 598, 604 (3d Cir.), cert. denied, 479 U.S. 989 (1986). Here, through the testimony presented at the hearing the government has met that burden. The totality of the circumstances, including the characteristics of defendant and the details of the interrogation, establish that defendant's statements voluntarily were made. There is no evidence that defendant was coerced or that the interviewing agents engaged in any type of unlawful pressure or tactics. Instead, the testimony establishes that the interview took place at defendant's residence, not the coercive atmosphere of a police station, and that no threats, promises or coercion were utilized.

Moreover, although defendant testified that he believed Agent Stitzel was overly aggressive in his questioning, it is undisputed that Agent Opferman took over the interview early on

AO 72
(Rev 8/82)

and defendant acknowledged that he never considered either Agent Opferman or Agent Seidman "aggressive."

Importantly, it also must be emphasized that defendant voluntarily agreed to return to his residence and talk with the agents even after being advised on at least two occasions by his brother, a criminal defense attorney, not to speak to the agents. Against this advice, defendant voluntarily drove back to his residence and voluntarily sat down with the agents and prepared and signed a written statement.

Under the totality of the circumstances, the court cannot conclude that the agents' tactics were so manipulative or coercive as to deprive defendant of his ability to make an unconstrained, autonomous decision to answer the agents' questions. Rather, the court finds that defendant's statements were voluntary in all respects.

Finally, defendant's contention that his written statement was not voluntary because the agents instructed him what to say is without merit. Although the testimony presented at the hearing indicates that Agent Opferman made suggestions to defendant as to how to structure the statement, there is no evidence that he ordered or directed defendant to admit that he had accessed numerous sites containing child pornography and had viewed images of nude underage girls. In addition, defendant acknowledged on the stand that he had been given the opportunity to review the statement and to make any changes he deemed appropriate.

Accordingly, for the foregoing reasons, defendant's motion to suppress statements on the ground of involuntariness will be denied.

An appropriate order will follow.

*[signature: Gustave Diamond]*
Gustave Diamond
United States District Judge

Date: April 20, 2009

cc: Stephen R. Kaufman
    Assistant U.S. Attorney

    Stephen M. Misko, Esq.
    106 S. Main Street
    Suite 704
    Butler, PA 16001